DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**RODNEY CHAVERS,**
Appellee.

No. 4D16-3006

[November 15, 2017]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Samantha Schosberg Feuer, Judge; L.T. Case No. 50-2015-CF-012000-AXXX-MB.

Pamela Jo Bondi, Attorney General, Tallahassee, and Cynthia L. Comras and Melanie Dale Surber, Assistant Attorneys General, West Palm Beach, for appellant.

Antony P. Ryan, Regional Counsel, and Paul O'Neil, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellee.

CONNER, J.

The State appeals the trial court's grant of immunity from prosecution and dismissal of the information against Rodney Chavers charging him with second-degree murder with a firearm. Because the order on appeal is silent on necessary findings, we reverse, quash the order, and remand for further proceedings.

*Background*

The State charged Chavers with second-degree murder with a firearm occurring on November 13, 2015. Chavers filed a motion to dismiss based on immunity under sections 776.012(2) and 776.032(1), Florida Statutes (2016), and Florida Rule of Criminal Procedure 3.190(b). Chavers alleged that he was immune from criminal prosecution because he believed, at the time of the shooting, that the shooting was necessary to prevent death or great bodily harm to himself or to prevent the imminent commission of a

forcible felony—the victim robbing him of his money.

In July 2016, the trial court conducted an evidentiary hearing on the motion. During the hearing, Chavers testified that on the day of the shooting, he had $300 to $400 in cash in his possession, which he took out of his pocket in front of a group of friends, including the victim. One of the men told Chavers that he should not be walking around with cash on him because of the reputation of the neighborhood. Chavers responded that he "was safe," that he "had protection," and that he "wasn't worried." Chavers testified that, in response, the victim said that "you [Chavers] [sic] not gonna do shit, I'll take it." Chavers ignored the victim's statement and continued talking with his friends.

Unprovoked, Chavers was then attacked from behind on the left side of his face, knocked up against a car, and became dazed. Chavers also testified that as he was trying to get up, he recognized that the victim was the one that hit him, and that the victim hit him several more times. He then saw the victim reaching for Chavers's side, but did not know whether the victim was reaching for Chavers's gun or the money in his pocket. The victim eventually made contact with Chavers's gun. Chavers tried to remove the victim's hand from his gun. Chavers grabbed his gun and struggled to block the attack with his other hand, and while he was still against the car, because he was not able to get up, he pulled the trigger. The victim did not drop to the ground. Chavers and the victim then ran in different directions. However, the victim eventually died of his gunshot wounds. Chavers also testified that he had known the victim for years and had previously seen the victim carry a firearm.

Chavers presented as a witness one of the men in the group that night. The witness corroborated Chavers's account of the exchange between Chavers and the victim leading up to the men struggling over Chavers's gun, but upon seeing the two struggle over the gun, the witness ran from the scene. He testified he heard shots, but did not see the actual shooting.

The State called witnesses as well, but none were eyewitnesses to the exchange between Chavers and the victim or the shooting. The State's witnesses testified regarding the actions and statements of Chavers after the shooting.

In a written order, the trial court found that Chavers's "fear of imminent great bodily harm was objectively reasonable," and that Chavers established by a preponderance of the evidence that he was "reasonable in his belief that use of the gun was necessary to prevent imminent death or great bodily harm." As such, the trial court decided that Chavers was

entitled to immunity, and dismissed the information.  The trial court did not discuss in the written order whether Chavers was engaged in a criminal activity at the time of the shooting, even though both the prosecutor and defense counsel argued this issue at the hearing.

The State gave notice of appeal.

*Appellate Analysis*

In a motion to dismiss for immunity under section 776.032, Florida Statutes, "[t]he trial court's factual findings are entitled to deference and must be supported by competent substantial evidence." *Joseph v. State*, 103 So. 3d 227, 229 (Fla. 4th DCA 2012).  "The trial court's legal conclusions are reviewed *de novo*." *Id.* at 230.

Chavers sought immunity from prosecution under sections 776.032(1) and 776.012(2), Florida Statutes (2016).  Section 776.032(1) provides, in pertinent part:

> (1) A person who uses or threatens to use force as permitted in s. 776.012, s. 776.013, or s. 776.031 is justified in such conduct and is immune from criminal prosecution and civil action for the use or threatened use of such force by the person . . . .

§ 776.032(1), Fla. Stat. (2016).  Section 776.012(2), provides:

> (2) A person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony.  A person who uses or threatens to use deadly force in accordance with this subsection does not have a duty to retreat and has the right to stand his or her ground if the person using or threatening to use the deadly force is not engaged in a criminal activity and is in a place where he or she has a right to be.

§ 776.012(2), Fla. Stat. (2016).  In other words, a grant of immunity under the rubric of "Stand Your Ground" law requires the application of at least two separate statutory provisions, yielding three separate paths to immunity.

The State asserts that the trial court erred in granting Chavers's motion to dismiss without first determining as a matter of fact whether Chavers

3

was "engaged in a criminal activity." The State argues that immunity pursuant to section 776.012(2) is unavailable if Chavers was involved in a criminal activity just prior to shooting the victim. The State further argues that the evidence presented clearly establishes that in the moments leading up to the shooting, Chavers was either committing a felony (carrying a concealed firearm without a license) or a misdemeanor (open carry of a firearm). Thus, the State contends that because Chavers was engaged in committing either criminal activity, he is not entitled to immunity.

Chavers responds with three arguments: (1) section 776.012(2) permits a person engaged in criminal activity to use deadly force *if* he or she satisfies the common-law duty to retreat; (2) the evidence showed that Chavers might have been openly carrying a firearm, merely a second-degree misdemeanor, which does not or should not qualify as a criminal activity for the purposes of section 776.012(2); and (3) it is the State's burden to show that Chavers was engaged in a criminal activity, and the State did not satisfy this burden.

Both the State and Chavers contend the language of section 776.012(2) is unambiguous and does not require statutory interpretation, yet standing on that contention, both sides argue the application of the statute yields diametrically opposite results. The primary difference between both sides is the import of the second sentence of section 776.012(2). Our opinion focuses on the import of the second sentence, and we do not address Chavers's arguments regarding what constitutes "a criminal activity" for purposes of section 776.012(2) and who has the burden of proof at the evidentiary hearing to determine immunity. We note that in 2017, section 776.032 was amended to add subsection (4), which addresses the burden of proof for claims of immunity. § 776.032(4), Fla. Stat. (effective June 9, 2017).[1]

---

[1] The amendment to section 776.032, now codified as subsection (4), reads as follows:

> In a criminal prosecution, once a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant at a pretrial immunity hearing, the burden of proof by clear and convincing evidence is on the party seeking to overcome the immunity from criminal prosecution provided in subsection (1).

§ 776.032(4), Fla. Stat. (effective June 9, 2017).

4

We begin addressing the diametrically opposed positions with three preliminary observations. First, immunity is granted statutorily in the context of both deadly and non-deadly force. This is obvious because section 776.032 requires that the use of force be permitted under either sections 776.012, 776.013, or 776.031, and each of those sections provides for the use of deadly and non-deadly force. *See* §§ 776.032, 776.012, 776.013, and 776.031, Fla. Stat. (2016). Second, under all four statutory provisions, the use of force is linked to having no duty to retreat under certain circumstances. Third, a denial of immunity does not preclude a claim of self-defense as an affirmative defense at trial. *Bretherick v. State*, 170 So. 3d 766, 778 (Fla. 2015) ("[I]f the motion to dismiss and the petition for writ of prohibition are denied, as in Bretherick's case, the defendant has yet another opportunity to claim self-defense as an affirmative defense at trial.").

It is because the legislature has linked the use of force to no duty to retreat under certain situations that we agree with the State that immunity cannot be granted in this case unless the requirements of the second sentence of section 776.012(2) are met. The legislature's intent was clear and unambiguous in the 2014 amendment to section 776.012 when it enacted subsection (1) to apply to non-deadly force, subsection (2) to apply to deadly force, and included in subsection (2) a provision for no duty to retreat when deadly force is used, provided the person using deadly force "is not engaged in a criminal activity and is in a place where he or she has a right to be." *See* § 776.012, Fla. Stat. (2016). We conclude the distinction in the duty to retreat in section 776.012 between deadly and non-deadly force is imported into section 776.032 under the section 776.012(2) path for immunity. Therefore, we hold that for Chavers to be immune from prosecution under the statutory authority cited in his motion, the trial court must find from the evidence that, at the time Chavers used deadly force, he (1) reasonably believed that using such force was necessary to prevent imminent death or great bodily harm to himself or to prevent the imminent commission of a forcible felony, (2) was not engaged in a criminal activity, and (3) was in a place he had a right to be.

In this case, the written order of the trial court granting immunity does not make any findings or reach any conclusions as to the requirements of the second sentence of section 776.012(2). Although it appears from the record that the parties did not dispute below that Chavers was in a place where he had a right to be at the time deadly force was used, they clearly disputed the issue of whether he was engaged in a criminal activity. Thus, we reverse and quash the order below granting immunity and remand for the trial court to enter an appropriate order after making additional findings regarding the requirements of the second sentence in section

776.012(2). We express no opinion, because the issues were not addressed by the trial court, as to what constitutes a criminal activity, which party has the burden of proof, and what effect a denial of immunity, if that is the trial court's final decision, would have on further proceedings.

*Reversed and remanded.*

FORST and KLINGENSMITH, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***